396 So.2d 632 (1981)
Brent BRACY
v.
STATE of Mississippi.
No. 52312.
Supreme Court of Mississippi.
April 8, 1981.
*633 Russel D. Moore, III, Binder & Moore, Firnist J. Alexander, Jr., Jackson, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ
SUGG, Justice, for the Court:
Defendant was convicted in the Circuit Court of the First Judicial District of Hinds County for the sale of phencyclidine (PCP) and sentenced to serve a term of twenty (20) years and fined $10,000. Defendant assigns as error:
1. The court erred in refusing to permit counsel to examine the Narcotics Bureau report of Agent Steve Mallory.
2. The court abused its discretion in sentencing the defendant, aged 18 years, to 20 years and a fine of $10,000.

I
Steve Mallory, agent of the Mississippi Bureau of Narcotics, testified he purchased 5,000 phencyclidine (PCP) tablets from the defendant, William Allen Stewart and Michael Jones for the sum of $3,200, and that he made a written report pertaining to the sale. At trial defendant moved for a production of Mallory's written report to be used by his attorney in cross-examining Mallory. The trial court overruled the motion to produce the entire report but directed the state to furnish that part of the report which contained statements made by the defendant.
On appeal defendant argues that he was entitled to the entire report to be used in cross-examining the witness Mallory. He relies on Shell Oil Co. v. Pou, 204 So.2d 155 (Miss. 1967) and Mississippi Highway Commission v. W.E. Howard, Jr., 253 Miss. 556, 176 So.2d 294 (1965). In Mississippi Highway Commission the trial court refused to make notes, which a witness had referred to during his direct examination, available to the opposite party for cross-examination of the witness. This Court held this was error and stated:
This ruling of the court was in error. In 58 Am.Jur. Witnesses § 601 (1948), it is stated:
The opposing party or counsel has the right, on proper demand, to inspect and use for purposes of cross-examination any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon the matters as to which he is testifying, and which in fact does tend to refresh his memory. The opposing party is accorded this right in order that he may ascertain whether the paper or memorandum used has any legitimate tendency to bring the fact in controversy to the mind of the witness, and in order that he may be in a position to cross-examine as to the testimony given and thereby test the candor and integrity of the witness ... (253 Miss. at 562, 563, 176 So.2d at 296)
The Court also held that, ordinarily refusal to require a witness to submit notes used on direct examination would be reversible error, but such failure was harmless error under Mississippi Supreme Court Rule 11.
Mississippi Highway Commission and Shell Oil Co. have no application to this case because Mallory did not use his written report to refresh his memory while he was testifying on direct examination, therefore, this argument of defendant has no merit.
Defendant also contends that if the report contains any exculpatory evidence, the refusal to permit counsel for defendant to examine it was error. This contention requires us to examine Mallory's report to ascertain if the failure of the Court to require the state to furnish the entire report violates due process in accordance with the rule enunciated in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and amplified in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 *634 L.Ed.2d 342 (1976). In Brady the Court stated:
We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
The principle of Mooney v. Holohan, [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts." A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile," to use the words of the Court of Appeals. [Brady v. Maryland] 226 Md., [422] at 427, [174 A.2d 167.] (373 U.S. at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218, 219).
In Agurs, the Court stated:
We are not considering the scope of discovery authorized by the Federal Rules of Criminal Procedure, or the wisdom of amending those Rules to enlarge the defendant's discovery rights. We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution. Our construction of that Clause will apply equally to the comparable Clause in the Fourteenth Amendment applicable to trials in state courts.
The problem arises in two principal contests. First, in advance of trial, and perhaps during the course of a trial as well, the prosecutor must decide what, if anything, he should voluntarily submit to defense counsel.
Second, after trial a judge may be required to decide whether a nondisclosure deprived the defendant of his right to due process. Logically the same standard must apply at both times. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.
Nevertheless, there is a significant practical difference between the pretrial decision of the prosecutor and the posttrial decision of the judge. Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicated accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure. But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.
... .
Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much. While expressing the opinion that representatives of the State may not "suppress substantial material evidence," former Chief Justice Traynor of the California Supreme Court has pointed out that "they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses." In re Imbler, 60 Cal.2d 554, 569, [35 Cal. Rptr. 293,] 387 P.2d 6, 14 (1963). And this Court recently noted that there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work *635 on a case." Moore v. Illinois, 408 U.S. 786, 795, [92 S.Ct. 2562, 2568,] 33 L.Ed.2d 706. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.
Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor. If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it. Cf. Giglio v. United States, 405 U.S. 150, 154, [92 S.Ct. 763, 766,] 31 L.Ed.2d 104. Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.
... .
On the other hand, since we have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel, we cannot consistently treat every nondisclosure as though it were error. It necessarily follows that the judge should not order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless-error standard. Under that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight effect." Kotteakos v. United States, 328 U.S. 750, 764, [66 S.Ct. 1239, 1247,] 90 L.Ed. 1557. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.
The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. (427 U.S. at 107-113, 96 S.Ct. at 2399-2402, 49 L.Ed.2d at 352-354)
When defendant's attorney moved for a production of Mallory's written report, the trial judge reminded him that the proper time according to the Rules[1] was not during the trial but before the trial. It was then developed that the prosecutor at least a month before trial read defendant's statements contained in Mallory's report to defendant's attorney. Defense counsel requested the court to examine the report in its entirety to which the court responded that it had examined the report but would also examine it in more detail.
The court then ordered that the statements of the defendant contained in the report be excised and furnished to defendant's counsel. The court then ordered the entire report sealed for examination by this Court on appeal and also included the portion furnished defendant's counsel. We have examined the entire report but find no exculpatory matter contained in the report.
The report consisted of 10 pages written in narrative form preceded by a cover sheet entitled "Prosecution Charge Sheet" and was followed by a laboratory evidence receipt. The portion of the report not furnished defendant contained a statement about an earlier sale of PCP by defendant *636 and others, a four line synopsis of the sale for which defendant was tried, an account of the arrangements for the sale, statements pertaining to surveillance units which were set up to observe the sale, a conversation between Mallory and Jones, conversations between Mallory and Stewart, Mallory's discussion about future transactions, a description of Mallory's departure from the apartment and his observation of the surveillance units, a description of the delivery by Mallory of the 5,000 tablets to the Mississippi Crime Lab, Mallory's information about defendant and his companions being stopped by a marked car of the Jackson Police Department, a description of Michael Jones and William Stewart, a description of the evidence and of the vehicle that Stewart and Bracy occupied when they departed. The trial court dictated into the record the description of defendant contained in the report.
We are at a loss to understand the reluctance of the state to reveal the information contained in the report because there is nothing in the report "that would subject any person to a substantial risk of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment resulting from such disclosure." Rule 4.06. Neither did the report contain any secret affecting national security. Accordingly, the report will not remain sealed.
We hold the trial court did not err in refusing to make the entire report available to defendant's counsel because there is nothing in the report that would have helped the defense or might have affected the outcome of the trial. Also, there was no material variance between Mallory's testimony and the report. It is therefore not necessary to determine whether withholding a part of the report was harmless error under the standard set forth in Agurs.

II
In his second assignment of error defendant contends that the trial court abused its discretion by imposing a sentence of twenty years and a fine of $10,000 on the defendant. It has long been the rule in this state that an imposition of a sentence in a criminal proceeding is within the sole discretion of the trial judge and this Court will not set it aside if the sentence is within prescribed statutory limits. Yazzie v. State, 366 So.2d 240 (Miss. 1979); Ellis v. State, 326 So.2d 466 (Miss. 1976); Ainsworth v. State, 304 So.2d 656 (Miss. 1974).

III
When this case was submitted, the Court requested additional briefs on the question of jurisdiction because we noted that defendant had filed a motion for a new trial which had not been disposed of before he perfected his appeal.
We have concluded that this Court has jurisdiction under the authority of Polk v. State, 247 Miss. 734, 156 So.2d 592 (1963) and Boydston v. State, 144 Miss. 104, 109 So. 727 (1926). In these cases we held that, when a defendant takes an appeal before his motion for a new trial is passed on by the trial court, taking the appeal constitutes an abandonment of his motion for a new trial.
This is not contrary to our holding in a number of cases that a judgment of the trial court is not final until a motion for a new trial is overruled. These cases involved the time for taking an appeal and did not involve a waiver by the party making the motion for a new trial. Gulf, Mobile and Ohio Railroad Co. v. Forbes, 228 Miss. 134, 87 So.2d 488 (1956); Davidson v. Hunsicker, 224 Miss. 203, 79 So.2d 839 (1935).
Neither is our holding contrary to the rule announced in Woods v. Lee, 390 So.2d 1010 (Miss. 1980). In that case appellant filed a motion for a judgment notwithstanding the verdict of the jury, or in the alternative, for a new trial. The trial judge took the motion under advisement and did not rule on it within six months. Appellant appealed under the provisions of section 11-1-17 Mississippi Code Annotated (Supp. 1979) but we held the statute did not authorize appeals in cases where a judge took a *637 motion for a new trial under advisement and did not render an opinion in six months. We held appellant's remedy was by mandamus to require the judge to rule on the motion.
In that case appellant did not abandon his motion for a new trial but appealed from the failure of the judge to rule on the motion within six months as an adverse ruling. We dismissed the appeal as being an interlocutory appeal and remanded the case for a ruling on the motion. No final order had been entered in that case. In the case now under consideration, a final order was entered and thus distinguishable from Woods.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.

ON MOTION TO DISMISS APPEAL
The state filed a motion to dismiss the appeal on the ground that the appeal was not taken within forty-five days after final judgment as required by section 11-51-5 Mississippi Code Annotated (1972).
We held in Nabors v. State, 288 So.2d 472 (Miss. 1974) that the limitations on the time to take an appeal to the Supreme Court does not begin to run with respect to a minor until his disability of minority has been removed. Appellant is a minor, and the appeal was taken before his disability of minority had been removed. We therefore overrule the motion to dismiss the appeal.
MOTION TO DISMISS APPEAL OVERRULED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Section 4.06 Uniform Criminal Rules of Circuit Court Practice.