904 So.2d 1185 (2004)
Wilbur PITTMAN a/k/a Wilbur Gene Pittman, Jr. and Sarah E. Pittman, Appellants
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01509-COA.
Court of Appeals of Mississippi.
November 2, 2004.
*1188 Leslie D. Roussell, Laurel, attorney for appellants.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. Wilbur Gene Pittman, Jr. and Sarah E. Pittman were found guilty in the Circuit Court of Greene County of possession of precursor chemicals with the intent to manufacture methamphetamines and were both sentenced to serve a term of twenty-five years in the custody of the Mississippi Department of Corrections and ordered to pay a fine of $10,000 and lab fees of $500. The Pittmans then filed various posttrial motions, which were all denied, and subsequently appealed to this Court.

STATEMENT OF THE ISSUES
I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING THE PITTMANS' MOTION TO SUPPRESS EVIDENCE?
II. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ALLOWING OFFICERS WHO DID NOT PERSONALLY PARTICIPATE IN THE SEIZURE OF SPECIFIC EVIDENCE PRESENTED AT TRIAL TO TESTIFY ABOUT SUCH EVIDENCE?
III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING THE PITTMANS' MOTION FOR A DIRECTED VERDICT AND SUBSEQUENT REQUEST FOR A JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, NEW TRIAL?
IV. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN FAILING TO PROPERLY INSTRUCT THE JURY AS TO THE ELEMENTS OF THE CRIME CHARGED IN THE INDICTMENT?
V. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ALLOWING INTO EVIDENCE ADDITIONAL CONTAINERS ALLEGEDLY CONTAINING PRECURSOR CHEMICALS EVEN THOUGH SAID CONTAINERS WERE NOT SUBJECTED TO TESTING FOR VERIFICATION OF THE CONTENTS OF SAID CONTAINERS OR WHAT HAD BEEN STORED IN SAID CONTAINERS?
VI. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN VIOLATING THE PITTMANS' CONSTITUTIONAL RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT?
VII. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BASED ON THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS?

FACTS
¶ 2. On May 1, 2000, Joe Dewitt was arrested after purchasing a variety of items used in the manufacture of methamphetamines. Upon questioning, Dewitt explained that he purchased said items resulting in his arrest, just as he had on past occasions, at the direction of Wilbur and Sarah Pittman who were running a methamphetamine lab from their home in Greene County. Ed Lowe, Jr., an officer *1189 with the City of Leakesville Police Department and an agent assigned to the South Mississippi Narcotic Task Force, was the acting case agent, so he went to the Greene County Justice Court where he informed Judge Mike Mizell of Dewitt's arrest and statement implicating the Pittmans. The judge issued Lowe a search warrant, which ultimately resulted in the Pittmans' arrest and conviction.

I.

SEARCH AND SEIZURE
¶ 3. The Pittmans filed with the trial court a motion to suppress arguing that the warrant upon which the search and seizure of their property was premised was not valid for want of probable cause, thereby constituting a violation of their Fourth Amendment right to be free from unreasonable searches and seizures. The court denied their motion, and the Pittmans assign the denial as error in their first issue on appeal arguing that the document, said to contain underlying facts and circumstances, was not attached to the affidavit for the search warrant despite the fact that the affidavit stated that the said document was attached. The Pittmans additionally argue that the evidence should be suppressed because the judge was given no information for determining the reliability of Dewitt as an informant.
¶ 4. In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established a "totality of the circumstances" standard for determining the existence of probable cause, which the Mississippi Supreme Court adopted in Lee v. State, 435 So.2d 674, 676 (Miss.1983). In application, the standard simply directs the magistrate to "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, 103 S.Ct. 2317. Additionally, reviewing a magistrate's issuance of a search warrant on appeal does not require that we make a de novo determination of probable cause; therefore, our standard of review is to determine whether there was a substantial basis for the magistrate finding probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss.1987).
¶ 5. In contradiction to its plain language, the search warrant was not accompanied by an attached "Underlying Facts and Circumstances" sheet, which was to contain facts supporting the issuance of the search warrant. This fact alone, however, does not render the search warrant fatally flawed, for to be in accord with the aforementioned "totality of the circumstances" standard, our review must include the facts and circumstances provided in the affidavit as well as the sworn testimony of Officer Lowe regarding what information he supplied to Judge Mizell. Williams v. State, 583 So.2d 620, 622 (Miss.1991).
¶ 6. At the hearing on the Pittmans' motion to suppress, Officer Lowe testified as to the facts and circumstances that he provided to Judge Mizell prior to issuing the search warrant. Specifically, Officer Lowe's testimony described to Judge Mizell that: (a) the source of Officer Lowe's information was Dewitt, who was arrested for possessing precursor elements; (b) Dewitt, in giving a formal statement after *1190 being arrested, implicated himself in criminal activity; (c) Dewitt gave detailed information regarding the location of the residence where the drugs were being manufactured; (d) Dewitt stated that he bought and supplied the Pittmans with precursor elements; (e) the Pittmans were the actual producers of the drugs; and (f) Dewitt drew a map of the area where the drugs were located.
¶ 7. Officer Lowe's testimony was properly considered as supplementing the search warrant affidavit, and in light of all surrounding circumstances, this Court is convinced that the issuing judge was presented with a substantial basis for finding probable cause. The State was under no burden to provide the judge with evidence for bolstering the reliability of Dewitt's information, for as the supreme court has explained, "when information is furnished by an eyewitness rather than from an informant, there is no need to show the party supplying the information was a credible person." Walker v. State, 473 So.2d 435, 438 (Miss.1985) (citations omitted). This eyewitness exception is founded upon the rationale that the information provided by such statements is "based on their own observation and thus are not likely to reflect mere `idle rumor or irresponsible conjecture.'" Id. Moreover, the supreme court has stated that doubtful or marginal cases regarding a magistrate's finding of probable cause should be resolved in favor of a search warrant. Davis v. State, 660 So.2d 1228, 1240 (Miss.1995). Therefore, we hold that the trial court did not err in denying the Pittmans' motion to suppress and, accordingly, find this issue without merit.

II.

EVIDENTIARY TESTIMONY  CHAIN OF CUSTODY
¶ 8. Martin Overstreet, an officer with the City of Waynesboro Police Department and an agent assigned to the South Mississippi Narcotic Task Force, testified at trial that, when executing the search warrant on the Pittmans' property, he was designated as custodian of all evidence seized by the other officers and agents, thereby entrusting him with the responsibility of maintaining a detailed inventory to reflect what items were found, where the items were found, at what time the items were found, and who the officers were finding the items. Following this, the State asked Officer Overstreet, in referring to the list he compiled as custodian, to identify a variety of evidentiary items, to which the Pittmans responded by "object[ing] to Mr. Overstreet being able to testify as to items other than those he personally collected." The trial court overruled the objection, which the Pittmans maintain was error.
¶ 9. In their brief, the Pittmans frame their contention stating that Officer Overstreet's testimony was allowed in contradiction to the hearsay rule and that it also violated their Six Amendment right to confront witnesses brought against them. The substantive argument advanced in support of their assignment of error, however, never directly addresses either of these issues. Rather, the Pittmans argue that the testimony regarding items seized by other officers were inadmissible as a result of the State's failure to establish a proper chain of custody as to these items, thereby rendering the veracity of Officer Overstreet's testimony unreliable. The Pittmans claim that the State failed to *1191 establish a proper chain of custody by not producing to testify every officer that seized an item the State wanted to introduce into evidence. They further assert that the absence of the other officers' testimony prejudiced their defense by preventing them from inquiring as to potential instances of evidence tampering.
¶ 10. At trial, the Pittmans never claimed Officer Overstreet's testimony to be objectionable on grounds that it violated the hearsay rule and their right to confront witnesses. For that reason, they are procedurally barred from asserting it for the first time on appeal. This Court cannot hold the trial court in error on an issue with which it was not presented, so we will not address this claim. Mitchell v. Glimm, 819 So.2d 548, 552(¶ 11) (Miss.Ct.App.2002). The Pittmans' chain of custody argument, however, was properly preserved for appellate review, so we will dispense with the merits of their contention.
¶ 11. The trial court is largely vested with the discretion for determining whether an adequate evidentiary chain of custody has been established by the State. Morris v. State, 436 So.2d 1381, 1388 (Miss.1983). The burden of producing evidence to demonstrate a break in the chain of custody rests with the defendant, and the applicable test for determining whether the defendant has met this burden "is whether there is any reasonable inference of likely tampering with or substitution of evidence." Brooks v. State, 761 So.2d 944, 948(¶ 18) (Miss.Ct.App.2000). The Pittmans maintain in their briefs, as they did at trial, that the reliability of Officer Overstreet's testimony was unsubstantiated; however, they failed to come forward with any proof at all to even suggest any impropriety regarding the evidence presented at trial. The Pittmans address their failure by claiming that the court prevented their obtaining such evidence by not requiring every officer to testify. Establishing a proper chain of custody, though, has "never required the proponent to produce every person who handled the object, nor to account for every moment of every day." Butler v. State, 592 So.2d 983, 985 (Miss.1991). By presenting no evidence, the Pittmans clearly failed to satisfy their burden. As a result, the trial court did not abuse its discretion, and we find this issue without merit.

III.

SUFFICIENCY OF THE EVIDENCE
¶ 12. In the case sub judice, the Greene County grand jury returned an indictment charging the Pittmans with possession of precursor elements, specifically stating that they "did knowingly, or intentionally possess two or more listed precursor chemicals or drugs being iodine, ephedrine, denatured alcohol, and ethyl ether with the intent to manufacture a controlled substance...." At trial, the State offered no evidence to prove that the Pittmans possessed iodine and, accordingly, requested that the indictment be amended to remove iodine as an element. The court allowed the amendment over objection by the defense.
¶ 13. The Pittmans argue that by listing in the indictment the particular chemicals found to be in their possession, the State was required to prove the presence of each chemical beyond a reasonable doubt, thereby compounding its burden for establishing its prima facie case. Having presented no evidence to prove that the Pittmans were in possession of iodine, the State moved to have iodine removed from the indictment, which the Pittmans contend is a change in substance, and not form, and therefore, erroneous. As a result of these errors, the Pittmans conclude *1192 that the trial court erred in not granting their motion for directed verdict and subsequent request for a judgment notwithstanding the verdict or, in the alternative, new trial.
¶ 14. The pivotal issue on which the Pittmans' argument is hinged, therefore, is whether the removal of iodine from the indictment constitutes a change that is substantive in nature or merely a change in form. The supreme court has explained that an indictment may be changed so long as "it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." Shelby v. State, 246 So.2d 543, 545 (Miss.1971) (citations omitted). The essence of being culpable for possessing precursor elements is being found to possess two or more of such chemicals or drugs. Despite failing to prove that the Pittmans were found in possession of iodine, the State clearly proved that the Pittmans possessed two or more precursor elements, specifically ephedrine, denatured alcohol, and ethyl ether. Therefore, the presence of iodine in the indictment is inconsequential to the offense with which they were charged and, furthermore, did nothing to alter any defense raised by the Pittmans. As a result, this issue is without merit.

IV.

JURY INSTRUCTION
¶ 15. Continuing their attack on the amended indictment, the Pittmans contend that iodine, ephedrine, denatured alcohol, and ethyl ether, were each an essential element of the crime charged, and therefore, the State had a corresponding responsibility to instruct the jury that possession of each of these precursor chemicals must be proven beyond a reasonable doubt. The Pittmans submitted a proposed jury instruction reflecting the aforementioned contention, but the court refused the instruction as stated and subsequently removed any mention of iodine. The Pittmans accordingly claim that trial court failed to instruct the jury as to each element of the crime charged, which constitutes plain error.
¶ 16. As previously discussed, the trial court acted in accord with the laws of this state when it amended the indictment charging the Pittmans, and the Mississippi Supreme Court has explained that "it is not error for jury instructions to reflect a constructive amendment to an indictment." Harris v. State, 830 So.2d 681, 684(¶ 7) (Miss.Ct.App.2002) (citation omitted). In accord with Harris, the deletion of iodine from "the jury instruction simply removed language that was unnecessary to prove the offense charged in the indictment." Id. For a conviction, the State was only required to prove that the Pittmans were in possession of two of the four chemicals listed in the indictment. The State offered evidence as to three, clearly satisfying the statute under which they were charged. Furthermore, the Pittmans failed to show any prejudice that could have occurred to their defense. Accordingly, the jury was properly instructed as to the elements of the crime charged, so we cannot possibly find the action of the trial court to constitute plain error. Therefore, we find that this issue is without merit.

V.

EVIDENTIARY RULING
¶ 17. When executing the search warrant on the Pittmans' property, numerous tupperware containers allegedly used in the manufacturing of methamphetamines were seized. At trial, the State sought to introduce several of said containers *1193 into evidence but was met with objection by the defense. Nevertheless, the trial court admitted the containers into evidence, which the Pittmans claim violated their due process rights. They maintain that the containers were introduced for the purpose of proving the presence of denatured alcohol and ethyl ether; however, testing failed to establish the presence of either chemical in the containers. Therefore, the containers were completely irrelevant, and admitting them into evidence was error.
¶ 18. As our case law often notes, evidence must first be relevant to be admitted at trial. M.R.E. 401; Stromas v. State, 618 So.2d 116, 118 (Miss.1993). Furthermore, the relevance of the evidence, and corresponding admissibility, are vested in the discretion of the trial court, and the decision of the trial court will not be disturbed on appeal unless there has been an abuse of that discretion. Hentz v. State, 542 So.2d 914, 917 (Miss.1989). As a consequence, reversal of the trial court's ruling requires that the admission or exclusion of the evidence result in prejudice or harm to the defense. Knight v. State, 248 Miss. 850, 856, 161 So.2d 521, 522 (1964).
¶ 19. Our review of the record clearly reveals that the trial court's admission of the containers did not deprive the Pittmans of any due process rights and, accordingly, did not prejudice their defense in any measure. At trial, the court explained that the Pittmans were charged with "possession of [precursor] drugs with the intent to manufacture." The fact that the containers were not found to have contained denatured alcohol and ethyl ether at the time of seizure is irrelevant because, as the court further explained, the containers were not for proving the presence of the chemicals but, instead, "goes to the intent issue." Considering these facts, we find that this issue is meritless.

VI.

CRUEL AND UNUSUAL PUNISHMENT
¶ 20. The Pittmans were sentenced pursuant to Miss.Code Ann. § 41-29-313(1)(b) (Rev.2001), which authorizes the courts to impose a maximum sentence of thirty years. In the case at bar, the trial court returned a sentence of only twenty-five years  five years less than the maximum. Nonetheless, the Pittmans claim, in the event that their convictions stand, that their sentences are disproportionate to their crimes in violation of the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment, especially when considering the fact that they are both first time offenders. They maintain that the record before this Court is devoid of any findings justifying such a harsh penalty. The Pittmans additionally contend that they were inappropriately denied a presentence report and sentencing hearing, and as a result, they did not have the opportunity to present evidence that might have persuaded the court to return more lenient sentences.
¶ 21. Trial courts are vested with complete discretion in sentencing, and in Mississippi, the general rule is that a sentence will not be disturbed on appeal unless the sentence exceeds the maximum term allowed by the statute. Nichols v. State, 826 So.2d 1288, 1290(¶ 10) (Miss.2002). A sentence will be reviewed on appeal, though, when a party contends that the penalty is disproportionate to the crime. Id. However, appellate review is premised upon an initial showing that "a threshold comparison of the crime committed to the sentence imposed leads to an *1194 inference of `gross disproportionality.'" Id. (citations omitted). The Pittmans' sentences are well within the statutory limits of Miss.Code Ann. § 41-29-313(1)(b) (Supp.2003), and a perusal of Mississippi's case law clearly demonstrates that the Pittmans were not subjected to sentences so excessive as to warrant our review. See Braxton v. State, 797 So.2d 826 (Miss.2000) (holding that thirty years was the maximum sentence within the statutory guidelines for unlawful sale of cocaine and, thus, was not excessive or cruel and unusual punishment); Edwards v. State, 615 So.2d 590 (Miss.1993) (holding that sentence of twenty-five years for possession of cocaine with intent to distribute was not grossly disproportionate where statutory maximum sentence was thirty years and fine of up to $1,000,000); Davis v. State, 817 So.2d 593 (Miss.Ct.App.2002) (holding that sentencing defendant to twenty years in prison for possession of more than one kilogram, but less than five kilograms, of marijuana was not excessive and unconstitutional where sentence was within statutory limits); Colenburg v. State, 735 So.2d 1099 (Miss.Ct.App.1999) (holding that sentence of thirty years for conviction of unlawful sale of crack cocaine was not excessive where sentence was within court's statutory authority); Hart v. State, 639 So.2d 1313 (Miss.1994) (holding that sentence of twenty years and fine of $250,000 was not disproportionate to conviction of possession of marijuana with intent to deliver or distribute where sentence was within statutory limits); Rogers v. State, 599 So.2d 930 (Miss.1992) (holding that sentence of twenty-five years in prison and fine of $500,000 was not excessive for conviction for distribution of crystal methamphetamine); Bracy v. State, 396 So.2d 632 (Miss.1981) (holding that trial court did not abuse its discretion by imposing sentence of twenty years and fine of $10,000 on defendant convicted of sale of phencyclidine (PCP)).
¶ 22. The Pittmans additional contention that they were erroneously denied a presentence report and sentencing hearing is equally unfounded. The Pittmans have no right to and, therefore, may not demand a presentence report. Roberson v. State, 595 So.2d 1310, 1315 (Miss.1992). They claim that a sentencing hearing would have afforded them the opportunity to present the court with ameliorative information warranting a more lenient sentence; however, the record reveals that they had such opportunity.
¶ 23. At the conclusion of trial, counsel for the Pittmans stated: "I would request that the Court, before passing sentence, allow us time to have a presentence report presented and have a sentencing hearing on this matter so that we might can bring forth mitigating evidence." The judge responded saying, "I made you aware yesterday that I would sentence upon a verdict," and then explained that "[y]ou can tell me whatever you wish to tell me at this time." The Pittmans were clearly afforded the opportunity to address the Court and, therefore, suffered no deprivation of rights, so their sentence can on no basis be considered excessively cruel and unusual. Accordingly, we find this issue without merit.

VII.

CUMULATIVE WEIGHT OF ERROR
¶ 24. In the event the individual errors committed throughout their trial are deemed harmless, the Pittmans finally claim that the cumulative effect of these individual errors deprived them of a fundamentally fair trial, requiring reversal of their conviction. Finding no reversible error in any single part of the trial, though, we cannot find reversible error as to the *1195 whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). Therefore, we find that this issue has no merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF GREENE COUNTY OF CONVICTION OF WILBUR GENE PITTMAN, JR. AND SARAH E. PITTMAN OF POSSESSION OF PRECURSOR CHEMICALS WITH THE INTENT TO MANUFACTURE METHAMPHETAMINES AND SENTENCE OF TWENTY-FIVE YEARS EACH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $10,000 EACH IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.