CARLTON, J.,
Dissenting.
¶ 29. I respectfully submit that the discovery violation by the State in this case snowballed during the course of the trial into reversible error. The trial judge received notice at the beginning of the trial that the State failed in its discovery obligation under Rule 9.04(A)(4) of the Uniform Rules of Circuit and County Court to produce the report of the lab examiner regarding the fingerprint analysis conducted by the State. In reaction to notice of the discovery violation, the trial court took no remedial steps or curative steps in response thereto. The trial judge denied the defense’s request for a continuance to investigate the lab report or interview the examiner. Then during the course of trial, the State presented evidence as to the contents of the lab report setting forth the conclusion of the lab examiner through the hearsay testimony of Mississippi Bureau of Narcotics Agent Will Peterson. I respectfully find reversible error in this case where the State violated discovery and then aggravated the discovery violation by offering hearsay testimony as to unauthenticated contents of the document that the State failed to produce in discovery to the defense. Therefore, I respectfully dissent.
¶ 30. Rule 9.04(A) requires the State, with few exceptions, to produce to a defendant certain evidence “which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution.” See also Box v. State, 437 So.2d 19, 25 n. 4 (Miss.1983) (Robertson, J., specially concurring) (“[T]he State ... should disclose all information it has plus all information it could obtain with due diligence or upon reasonable inquiry”). Rule 9.04(1) of the Uniform Circuit and County Court Rules provides the following procedure for trial judges to handle discovery violations:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery *157 of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
The court shall follow the same procedure for violation of discovery by the defense.
(Emphasis added).
¶ 31. On the day of trial, Pilgrim requested a continuance because his counsel was unprepared to represent him and the State failed to produce the lab report at issue. The trial judge denied Pilgrim’s request, only allowing the defense a few minutes before trial began to find Agent Peterson, who possessed the report, so the defense could examine it. Note, Rule 9.04 places a duty on the prosecution to disclose any reports such as the lab report prepared in connection with this case, and the State must abide by its discovery duties if the existence of the evidence is known or by the exercise of due diligence should it become known to the prosecution. The State failed to exercise such due diligence in this case in failing to produce the report to Pilgrim or his counsel. The late disclosure prevented Pilgrim’s counsel from interviewing the fingerprint examiner whose conclusions were reflected in the report or to otherwise investigate the report, interview the examiner, or to consult other examiners.
¶ 32. The Mississippi Supreme Court addressed a similar scenario in Foster v. State, 493 So.2d 1304 (Miss.1986). In Foster, the State violated Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice[5] by failing to disclose the results of the state crime laboratory’s comparison of the defendant’s hair to a hair found on a disguise. Id. at 1306. At trial, the defense elicited testimony during cross-examination of a police officer that revealed the existence of the report. Id. After hearing the testimony regarding the contents of the lab report on cross-examination, the defense requested production of the document, which the trial court denied. Id. at 1307. The Foster court reasoned as follows:
The [Sjtate cites a number of cases for the proposition that reversal for discovery violations of this nature is proper only where prejudice is shown. With one exception, all of these cases antedate the adoption of Rule 4.06. The exception is Bracy v. State, 396 So.2d 632 *158 (Miss.1981), in which portions of a report filed by a narcotics officer were withheld from the defense. The Court in that case refused to reverse because the portions of the report withheld “contain nothing ... that would have helped the defense or might have affected the outcome of the trial.” (396 So.2d at 636). But Bracy differs from the present case in that the trial court and this Court reached that conclusion after examining the report. In the present case, the report was simply not seen by the trial court or this Court. The only testimony as to the content of the report was that given by Officer [G.A.] Liles. Obviously, it will not do for the [SJtate to withhold lab reports and then offer the unsupported testimony of its own witnesses as establishing their content.
Id. at 1307 (emphasis added).
¶ 33. Though the trial court in the present case did not deny Kendall Pilgrim an opportunity to review the lab report, the trial court did conclude, based on assertions by the State, that the report contained no exculpatory information. In the case before this Court, the trial judge reasoned that the discovery violation was “academic” and “of no moment” because “[the prosecutor] said that no prints, no latent prints were lifted.” The trial judge accepted the prosecutor’s assertion that the report contained no valuable information.[6] However, the supreme court has held that defense attorneys should determine whether or not discoverable material will be helpful in defending their clients. Hentz v. State, 489 So.2d 1386, 1388 (Miss.1986). The lab report is not a part of the record for this Court to review on appeal.
¶ 34. In reversing the trial court’s judgment in Foster, the supreme court relied on Hentz, 489 So.2d at 1388. Foster, 493 So.2d at 1308. The Hentz case dealt with another similar situation in which the State failed to produce tapes during discovery, but allowed testimony regarding their contents at trial. Hentz, 489 So.2d at 1387. The supreme court reversed the conviction and stated the following:
An important question in discovery, such as involved here, is who is going to determine whether or not tapes or written instruments are exculpatory or important to the defense, if counsel is unable to see, hear, or know what is contained therein? Is the State[’s] attorney the only person who will make that determination? We think not. The Court now declares that as a matter of good practice and sound judgment in the trial of criminal cases, prosecuting attorneys should make available to attorneys for defendants all such material in their files and let the defense attorneys determine whether or not the material is useful in the defense of the case. We direct the attention of trial judges to this problem and suggest that they diligently implement this suggestion in order to dispense with costly errors, which might cause reversal of the case.
Id. at 1388.
¶ 35. While the trial judge in the instant case allowed Pilgrim to read the lab report before trial, Pilgrim possessed no *159 meaningful opportunity to investigate the report or the methods used to analyze the fingerprints; the fingerprint examiner, or the qualifications possessed by such examiner; the chain of custody of the evidence; or whether such lab results could be useful in his defense. In reversing a criminal conviction for a discovery violation, the supreme court in Box, 437 So.2d at 21, stated that “[t]his State is committed to the proposition that ... conflicting interests [of the prosecution and defense] are best accommodated and that justice is more nearly achieved when, well in advance of trial, each side has reasonable access to the evidence of the other.” Further, the Box court held that “[prosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is no rule.” Id.
¶ 36. Recently, in Fulks v. State, 18 So.3d 803 (¶ 14) (Miss.2009),[7] the supreme court reversed the armed robbery and aggravated assault convictions of Tomarcus Monte Fulks based on the State’s violations of Rule 9.04. The Fulks court held that the trial court’s failure to grant the defendant a continuance when faced with a witness whose story changed from exculpatory to inculpatory on the evening before trial began constituted reversible error. Id. The supreme court held that the defendant had insufficient time to react effectively to the change in the evidence. Id. at (¶ 12). Likewise, without a continuance to evaluate the lab report, Pilgrim had an insufficient period of time to investigate the previously-undisclosed evidence. I find the trial judge abused his discretion by denying Pilgrim’s request for a continuance to examine and evaluate the lab report.
¶ 37. Moreover, I find that allowing the hearsay testimony regarding the contents of the report into evidence constituted an abuse of discretion. Rule 801(c) of the Mississippi Rules of Evidence defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The State argues that the prosecution offered the testimony regarding the lab report for the purpose of showing the jury that the State had conducted a complete investigation and not to prove that the crime lab had found no prints on the bag. However, the officer testified to more than the course of investigation, chain of custody, or merely the sequence of events to show a complete investigation. He testified to the results contained in the report and conclusions of the lab examiner.
¶ 38. The majority asserts that Pilgrim opened the door to the admission of the lab-report evidence. However, the door cannot be opened to admit hearsay. The supreme court has held that “[t]here is no hearsay exception based upon the scope of examination. You may allow its admission by failing to object to it, but you simply cannot ‘open the door’ to hearsay.” Murphy v. State, 453 So.2d 1290, 1294 (Miss.1984). Instead, evidence rendered relevant by and offered through an opened evidentiary door would have to be properly authenticated and meet evidentiary foundational requirements in order to be admissible. In short, Pilgrim could not open the door to allow hearsay testimony regarding the lab report. Id.
¶ 39. The State utilized Agent Peterson’s testimony to admit the results and conclusions contained in the report of the lab examiner into evidence, even though the law enforcement officer could not au *160 thenticate the document or conclusions contained therein. See M.R.E. 802 (“[h]ear-say is not admissible except as provided by law”).
¶ 40. The United States Supreme Court recently held in Melendez-Diaz v. Massachusetts, — U.S. -, -, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009) that certificates of analysis indicating that seized evidence contained cocaine were testimonial statements. The Supreme Court held that the certificates were “functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination.’ ” Id. (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). Further, “[a]bsent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial.” Id. (quoting Crawford v. Washington, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Therefore, in light of Rule 9.04 and the Supreme Court’s holding in Melendez-Diaz, I would find the contents of the report were inadmissible without the fingerprint analyst from the crime lab present as a witness. The trial judge abused his discretion in allowing Agent Peterson to testify regarding the unauthenticated contents of the lab report.
¶ 41. For the reasons stated above, I respectfully dissent and would reverse the judgment of the trial court and remand this case for further proceedings.
KING, C.J., GRIFFIS AND ISHEE, JJ, JOIN THIS OPINION.

. Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice is now Rule 9.04 of the Uniform Rules of Circuit and County Court.

. I note that Rule 9.04(A) does not require the discovery material to be "exculpatory” in order for the State to be required to produce it to the defendant. The rule requires that the State produce, among other items, "[a]ny reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert.” UCCCR 9.04(A)(4). The rule then further requires the production of "[a]ny exculpatory material concerning the defendant.” UCCCR 9.04(A)(6).

. The supreme court handed down the Fulks opinion on July 23, 2009. As of the time of the drafting of this dissent, the time for rehearing had not closed.