936 So.2d 377 (2006)
Ellis Wayne WATTS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01872-COA.
Court of Appeals of Mississippi.
February 14, 2006.
Rehearing Denied May 30, 2006.
*379 William L. Ducker, Purvis, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Ellis Watts was convicted in the Circuit Court of Lamar County of possession of precursor chemicals with intent to manufacture a controlled substance. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections with five years to be served at the Mississippi Department of Corrections. The remaining ten years were to be served on post-release provisions, with a five-year supervision period. Watts was also ordered to pay a $5,000 fine and to participate in a drug and alcohol treatment program prior to his release.
¶ 2. Feeling aggrieved, Watts appeals and asserts that the trial court erred in (1) overruling his motion to suppress, (2) admitting evidence over his objections, (3) denying his motion for a directed verdict, (4) overruling all objections made by him that were, in fact, overruled, and (5) refusing certain jury instructions that were requested by him.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. Chris Lowe, a deputy with the Lamar County Sheriff's Department, received a telephone call from security at the Wal-Mart store located on Highway 49 in Hattiesburg, Mississippi. The call was to *380 inform Deputy Lowe that an individual in a wrecker, marked "Wayne's Wrecker," had purchased two cans of starter fluid. Thereafter, Deputy Lowe set up surveillance at the other Wal-Mart located on Highway 98 in Hattiesburg, Mississippi. Deputy Lowe observed the wrecker pulling into the Wal-Mart parking lot, and he asked Wal-Mart security to inform him of the items which were purchased by the individual driving the wrecker. After being told what the individual had purchased, Deputy Lowe followed the wrecker for a short distance before initiating a traffic stop. The driver of the wrecker, later identified as Ellis Watts, consented to a search of his vehicle. The search of the vehicle uncovered two cans of starter fluid, four boxes of Equate Antihistabs, aquarium tubing, an aquarium pump, and two gas cans. All were items that Watts had just purchased from the two Wal-Marts. Deputy Lowe found the cans of starter fluid concealed under a camouflage net in a tool bucket and the anitihistabs stuffed in the seat under the armrest of the wrecker.
¶ 5. At trial, Deputy Lowe explained that methamphetamine manufacturers often purchase different ingredients at different locations in order to avoid suspicion. Deputy Lowe testified that starter fluid and pseudoephedrine pills are two of various items used to manufacture methamphetamine. Deputy Lowe also testified that after he placed Watts under arrest and read him his Miranda rights, he asked Watts when was the last time that Watts had used methamphetamine. Deputy Lowe stated that Watts told him that he had used methamphetamine the day before.[1]
¶ 6. Based on the statement made about the last time he had used methamphetamine and the items recovered from his vehicle, Deputy Lowe obtained a search warrant for Watts's residence. At Watts's home the police discovered a "burn pile," which is often associated with methamphetamine cooking because it provides a means to dispose of evidence. An empty salt box was found outside, well away from Watts's kitchen. This was an important discovery because there was testimony that salt is used in the process of cooking methamphetamine. Probably most important was the discovery of two aerosol cans that had been punctured at the bottom. The significance of this discovery is that the punctured holes in the cans is consistent with the process of removing ether for use in methamphetamine cooking.
¶ 7. Archie Nichols, a forensic scientist employed by the Mississippi Crime Laboratory, testified concerning the chemical analysis that he performed on the two cans of starting fluid and four boxes (exactly 192 tablets) tendered to him by the Lamar County Sheriff's Department for analysis. Nichols testified that the cans of starter fluid contained ether, which is one of the components used in the manufacturing of methamphetamine. Nichols also testified that the four boxes of antihistabs contained the active ingredient pseudoephedrine, which is the main ingredient in methamphetamine. Nichols explained to the jury how salt is used in the cooking process. He also explained that the aquarium *381 pump and tubing, which were found in Watts's possession, are commonly used in manufacturing methamphetamine. Finally, Nichols testified that he was not sure how the two newly purchased gas cans might have been used but that they could have been used to either store solvents or transfer the product from one container to another.
¶ 8. Jonathan Harless, a lieutenant with the Mississippi Department of Public Safety, Bureau of Narcotics, was qualified as an expert in the illegal manufacture of methamphetamine. Harless explained that methamphetamine manufacturers perform certain tasks to relieve the pressure in ether cans and then puncture neat round holes in the cans to extract the ether from the can. Harless also explained the use of aquarium tubing in the process of manufacturing methamphetamine. Harless testified that it has been his experience that "burn piles" are common at methamphetamine manufacturing sites because they allow methamphetamine manufacturers to burn off incriminating labels. Harless testified that after listening to the testimony about the circumstances under which the items were purchased and the way that they were discovered, in conjunction with what the search of Watts's residence revealed, it was his opinion, based on his training and experience, that the items Watts purchased were going to be used to manufacture methamphetamine.
¶ 9. Watts, who owned a wrecker service and auto repair shop, testified as to why he was in possession of the various items generally associated with manufacturing methamphetamine. He testified that his two diesel wreckers were being repaired and that the mechanic performing the work informed him that he needed two cans of starter fluid to assist in starting the trucks. This story was corroborated by the testimony of the mechanic who performed the repairs. Watts testified that he was going to use the aquarium tubing and pump as a syphon hose, which was something that he regularly used in his line of business. Watts also testified that he noticed that Wal-Mart had the two gas cans on sale as a bundle package. According to Watts, part of his wrecker services encompassed taking gas to people who had run out of gas; therefore, he was always looking for a deal on gas cans because he could always use more. Watts further testified that he bought two packs of the antihistabs for his "sinus and allergies" without realizing that he already had two packs in his wrecker. Finally, Watts testified that the reason that he went to both Wal-Marts was that one store did not have a particular item that he needed, and he thought that maybe the other store may have had the item.
¶ 10. Additional facts, as necessary, will be related during the discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Motion to Suppress
¶ 11. Watts contends that the trial court erred in overruling his motion to suppress. Watts argues that it was error for the court not to hear his motion in a separate hearing. Watts further argues that he was entitled to an in camera hearing on his motion to suppress either prior to the trial or outside the presence of the jury. Watts maintains that the court erred in deciding first to receive all the evidence and then rule on his motion.
¶ 12. "When this court reviews a trial court's ruling on a suppression hearing, we must determine whether the trial court's finding is supported by substantial evidence considering the totality of the *382 circumstances." Reid v. State, 825 So.2d 701, 702(¶ 5) (Miss.Ct.App.2002). The admissibility of evidence lies within the trial court's discretion and the trial court will only be reversed if that discretion is abused. Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000). With this standard in mind, we examine Watts's arguments.
¶ 13. We note from the outset that Watts had a duty to pursue a hearing and decision by the court on his motion to suppress. See URCCC 2.04. Watts does not explain in his brief why the court failed to grant him a hearing on his motion to suppress, and we do not know why the court decided to take this course of action. Nevertheless, notwithstanding the fact that the judge did not rule on the motion until near the end of the trial, we find that he did not abuse his discretion because there was substantial evidence to support his ruling. Watts was stopped after law enforcement officials received credible information that he had purchased some precursor chemicals. Based on this information, as we discuss in the second issue below, Deputy Lowe had probable cause to initiate a traffic stop of Watts's vehicle. Once Watts's vehicle was stopped, he gave Deputy Lowe permission to search his vehicle. The search uncovered evidence that Watts now seeks to suppress. For these reasons, the evidence should have been admitted, and the trial court properly overruled Watts's motion to suppress.
¶ 14. The motion to suppress also sought the suppression of Watts's admission to Deputy Davis that Watts had recently used methamphetamine. Watts argues that Deputy Davis, who was the person that transported Watts to the police station, was not present when Deputy Lowe gave Watts his Miranda warnings. Therefore, according to Watts, Deputy Davis should have given him his Miranda warnings again before he started questioning him about his recent use of methamphetamine. Watts cites Underwood v. State, 708 So.2d 18 (Miss.1998) and Taylor v. State, 789 So.2d 787 (Miss.2001), as support for his contention that his subsequent statement required a subsequent Miranda warning or, at the least, that Deputy Davis should not have been allowed to rely on the warning given by Deputy Lowe. However, the Mississippi Supreme Court has stated:
[N]either Underwood nor Miranda requires that a criminal defendant be advised of his rights every time there is a brief pause in questioning. Miranda simply requires that `[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'
Taylor, 789 So.2d at 794(¶ 27) (citing Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Watts does not claim that he invoked his right to remain silent while being questioned by the deputies.
¶ 15. Even if we were to hold that Deputy Davis should have administered a second set of warnings, we would hold the failure harmless since it is not disputed that Deputy Lowe administered the Miranda warnings to Watts, and Watts made the same statement to Deputy Lowe as he made to Deputy Davis. Therefore, Watts's statement to Davis was cumulative. Accordingly, we find that this issue is without merit.

(2) Erroneous Admission of Evidence
¶ 16. Watts asserts that the trial court erred in admitting certain evidence against him. The Mississippi Supreme Court has established the following standard of review for a trial court's admission of evidence: "[T]he admissibility of evidence *383 rests within the discretion of the trial court. [However], the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Sturdivant v. State, 745 So.2d 240, 243(¶ 10) (Miss.1999) (citations omitted).
¶ 17. The primary thrust of Watts's argument is that the cans of starter fluid, the siphon hose, the two gas cans, and the four boxes of pills should not have been introduced into evidence because they were the products of an illegal search. Watts appears to be making the argument that Deputy Lowe lacked reasonable suspicion to initiate a traffic stop on his vehicle; therefore, the evidence resulting from the search should have been suppressed because the search, itself, was illegal. Watts cites Walker v. State, 881 So.2d 820 (Miss. 2004), as support for his proposition. However, we find Walker to stand for the exact opposite position. In Walker, our supreme court stated that "the investigative stop exception of the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer has a reasonable suspicion, based upon specific and articulable facts which, taken together with rational inferences from those facts, result in the conclusion that criminal behavior has occurred or is imminent." Walker, 881 So.2d at 826(¶ 10) (citing Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
¶ 18. Here, Watts was stopped after he was observed purchasing two precursor chemicals at two different Wal-Marts within a short span of time. Based on the information received from Wal-Mart security personnel, Deputy Lowe clearly had reasonable suspicion to conclude that criminal behavior had occurred or was imminent. Moreover, after Deputy Lowe initiated the investigatory traffic stop, Watts consented to a search of his vehicle, which resulted in the discovery of the other items he contends should not have been admitted into evidence. Therefore, we find that the trial court did not abuse its discretion in admitting the evidence.
¶ 19. Watts also contends that the trial court admitted his oral statement to Deputy Lowe about the last time he had used methamphetamine without first conducting a Rule 403 analysis.[2] This assertion is completely contradicted by the record, as evidenced by the following conversation between the court and Watts's trial counsel:
BY THE COURT: Well, I understand it's prejudicial. The fact that he had Sudafed with him is also prejudicial.
BY MR. JONES: Your Honor, I'm not talking about the Sudafed. I'm talking about 
BY THE COURT: I understand. The statement that he had used the lastthe day before.
BY MR. JONES: The eveningthe night before.
BY THE COURT: The day beforethe night before. No, that is verythat's more probative of the issue of why he waswhat he was going to use these items for than it would be prejudicial, and so I think the probative value there would outweigh the prejudicial. . . .
Therefore, this issue is without merit.

(3) Motion for a Directed Verdict
¶ 20. Watts contends that the trial court erred in denying his motion for *384 a directed verdict. Watts claims that the trial court should have sustained his motions for a directed verdict at the close of the State's case-in-chief and at the conclusion of the trial.[3] Watts argues that although he was found in possession of two precursor chemicals, ether and pseudoephedrine, there was nothing illegal about his possession, given his profession and his reason for purchasing the pills. Watts also argues that there was insufficient evidence to prove his intent to manufacture a controlled substance.
¶ 21. A motion for a directed verdict challenges the legal sufficiency of the evidence. When reviewing the legal sufficiency of the evidence supporting a conviction, we examine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, 909 So.2d 731, 736 (¶ 17) (Miss.2005) (quoting Bush v. State, 895 So.2d 836 (¶ 16) (Miss.2005)).
¶ 22. Considering the evidence in the light most favorable to the prosecution, we find that there was more than sufficient evidence for a reasonable jury to find that Watts committed the charged offense. Watts was found in possession of two precursor chemicals, a fact which is uncontroverted. Although Watts gave explanations for the reasons why he possessed these items, it was up to the jury to accept or reject his explanation. Further, Watts admitted to using methamphetamine the day before. A search of Watts's home uncovered other items associated with methamphetamine manufacturing. There was testimony by law enforcement officials, trained in the prevention and detection of methamphetamine manufacturing, that Watts's actions indicated an intent to manufacture methamphetamine. Therefore, the evidence presented was sufficient to support a conviction. Watts's assignment of error is without merit.

(4) Watts's Objections
¶ 23. In this assignment of error, Watts contends that the trial court erred in overruling certain objections that he made. Watts specifically complains of two objections that were overruled by the trial judge.
¶ 24. First, Watts objected and moved for a mistrial when a member of the venire made the following comment: "As an employee of Wal-Mart, I've seen Mr. Watts in the 49 store a lot." Apparently, this comment was made during voir dire. Watts argues that this comment tainted the entire venire and deprived him of a fair trial. "Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion." Shelton, 853 So.2d at 1183 (¶ 41) (citing Pulphus v. State, 782 So.2d 1220, 1223 (¶ 10) (Miss.2001)). "The failure of the court to grant a motion for a mistrial will not be overturned on appeal unless the trial court abused its discretion." Id. (quoting Bass v. State, 597 So.2d 182, 191 (Miss.1992)).
¶ 25. We find that the trial court did not abuse its discretion in denying the *385 motion for a mistrial. We cannot say that the comment by a member of the venire resulted in substantial or irreparable harm to Watts's case because Watts, in his own testimony, admitted to frequent trips to Wal-Mart: "I usually shop Wal-Mart all the time. I mean, that was mythe cheapest and best place. You know, I could get most anything and everything I needed." Watts also admitted to going to two different Wal-Marts on the day in question. Furthermore, Watts's trial counsel, as well as the prosecution, decided not to transcribe the voir dire portion of the trial. As a result, Watts failed to provide us with a record of what actually transpired during this portion of the trial. We note that Watts's trial counsel submitted a supplemental affidavit asserting that such a remark was indeed made. However, this affidavit does little to aid our review because it fails to set forth what transpired after the remark was made. Therefore, there is no record of what actions, if any, the court may have taken to correct the problem. Accordingly, Watts's assertions that the trial court did nothing to determine the prejudicial effect of the remark cannot be supported by the record. We cannot hold the lower court in error when Watts has failed to present a sufficient record to support his argument. See Williams v. State, 522 So.2d 201, 209 (Miss.1988). This issue is without merit.
¶ 26. Watts next argues that the court erred in admitting rebuttal testimony by the prosecution. Watts contends that the rebuttal testimony of Deputies Davis and Lowe was not in response to anything brought out in his defense of the case.
¶ 27. The determination of whether evidence is properly admitted as rebuttal evidence is within the discretion of the trial court. Ruffin v. State, 736 So.2d 407, 409 (¶ 10) (Miss.Ct.App.1999) (citing Powell v. State, 662 So.2d 1095, 1098-99 (Miss.1995)). "Therefore, on appeal, [appellate courts] review such a ruling only for an abuse of discretion." McGaughy v. State, 742 So.2d 1091, 1093 (¶ 6) (Miss. 1999). The Mississippi Supreme Court has spoken on the issue of rebuttal evidence:
The rule is that when the question is not free from doubt whether the evidence offered in rebuttal is that which belongs to the evidence in chief, or whether it is rebuttal evidence proper, the court should resolve the doubt in favor of reception in rebuttal where (1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surrebuttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
Smith v. State, 646 So.2d 538, 543-44 (Miss.1994) (quoting Riley v. State, 248 Miss. 177, 186, 157 So.2d 381, 385 (1963)).
¶ 28. A review of the record reveals that the rebuttal testimony was properly admitted. Watts denied making an admission to Deputy Lowe about using methamphetamine the day before Watts was arrested. Deputy Davis rebutted Watts's claim by testifying that Watts told him the same thing while in transit to the police station. Watts also denied that he tried to conceal any of the items he bought at Wal-Mart. Deputy Lowe was called to rebut this assertion, and he reiterated the manner in which he discovered certain items when he performed the search of Watts's vehicle. Watts also claims that he was not afforded an opportunity for surrebuttal. A review of the record reveals that Watts's trial counsel never requested surrebuttal; *386 therefore, Watts cannot now claim that the lower court denied him something for which he never asked. Accordingly, we find that this issue is without merit.

(5) Jury Instructions
¶ 29. Watts contends that the trial court erred in refusing to grant two of his jury instructions. Watts argues that one of his instructions, D-10, should have been granted because it properly instructed the jury on reasonable doubt, and it was not repetitive of any other instruction given. Watts further argues that the court's granting of the presumption of innocence instruction did not suffice for instructing the jury on reasonable doubt.
¶ 30. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State, 823 So.2d 582, 584 (¶ 4) (Miss. Ct.App.2002) (quoting Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982)). Defendants do not have an absolute right to have their jury instructions granted. "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence." Humphrey v. State, 759 So.2d 368, 380 (¶ 33) (Miss.2000) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)) (overruled on other grounds).
¶ 31. In his designation of the record, Watts only designated the two instructions that he contends the court erred in not granting. He did not designate, and the record is missing, the remaining jury instructions. The Mississippi Supreme Court has spoke on the issue of an appellant relying on evidence not contained in the record in support of arguments requesting reversal:
We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.
Mason v. State, 440 So.2d 318, 319 (Miss. 1983). Appellate courts have repeatedly stressed that transcripts which are necessary for appeal are to be made part of the record, and that the appellant bears the burden of presenting a record which is sufficient to support his assignments of error. Roberts v. State, 761 So.2d 934, 935 (¶ 3) (Miss.Ct.App.2000) (citing Williams, 522 So.2d at 209). Watts's assertions that the trial court erred in not granting his instructions and in failing to properly instruct the jury on reasonable doubt cannot be supported by the record because he failed to provide us with all given instructions. The record reflects that eleven instructions were given, and Watts only provided the two refused instructions for our review. We cannot find that the trial court erred in refusing Watts's two jury instructions without first knowing the substance of the jury instructions that were actually given. Because Watts failed to present a sufficient record to support his arguments, this assignment of error is without merit.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY OF CONVICTION OF POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE A CONTROLLED SUBSTANCE AND *387 SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS TO BE SERVED AT THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND THE REMAINING TEN YEARS OF SAID SENTENCE TO BE SERVED UNDER THE POST-RELEASE PROVISIONS WITH A FIVE-YEAR SUPERVISION PERIOD, AND FINE OF $5,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Deputy Lowe testified that after he placed Watts under arrest, he called Deputy Scott Davis to transport Watts to the Lamar County Jail. While the record does not reflect the exact time Deputy Davis arrived, it appears that he arrived very shortly after being called, because Watts wrecker was still on the scene when he arrived. Deputy Davis testified that he was aware that Deputy Lowe had administered the Miranda warnings to Watts. After Deputy Davis began the transport to the Lamar County Jail, he also asked Watts when was the last time that Watts had used methamphetamine. Watts's answer to Deputy Davis was the same as Watts's answer to Deputy Lowe.
[2] Mississippi Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[3] It is a well-settled principle of Mississippi law that "when the defendant proceeds with his case after the State rests and the court overrules the defendant's motion for a directed verdict, the defendant has waived the appeal of that directed verdict." Shelton v. State, 853 So.2d 1171, 1186 (¶ 49) (Miss.2003) (citing Holland v. State, 656 So.2d 1192, 1197 (Miss.1995)). Therefore, Watts effectively waived his motion for a directed verdict when the trial court denied the motion and he proceeded with his case. Consequently, we limit our discussion to Watts's motion for a directed verdict at the conclusion of the trial.