19 So.3d 148 (2009)
Kendall Wayne PILGRIM, Appellant
v.
STATE of Mississippi, Appellee.
No. 2008-KA-00531-COA.
Court of Appeals of Mississippi.
October 13, 2009.
*150 Edmund J. Phillips, Newton, Christopher A. Collins, attorneys for appellant.
Office of the Attorney General by: Billy L. Gore, attorneys for appellee.
EN BANC.
MYERS, P.J., for the court.
¶ 1. Kendall Wayne Pilgrim was convicted in the Circuit Court of Neshoba County of possession of methamphetamine in an amount of at least 0.10 gram but less than 2.0 grams, in violation of Mississippi Code Annotated section 41-29-139(c)(1)(B) (Rev. 2005). The trial court sentenced Pilgrim as a second offender to sixteen years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Pilgrim appeals, arguing that the trial court erred in denying his motion for a continuance, in refusing one of his jury instructions, and in the admission of hearsay testimony. Finding no reversible error, we affirm.

FACTS
¶ 2. Mississippi Highway Patrolman Harbert Johnson testified that he and two other patrolmen were conducting a roadblock at an intersection in Neshoba County, Mississippi, when Pilgrim approached in a white van. Pilgrim was the only occupant of the van. Trooper Johnson observed Pilgrim throw a black object out of the driver's side window as the van approached the checkpoint.
¶ 3. While Pilgrim, who did not have his driver's license with him at the time, was held at the checkpoint, Trooper Johnson retrieved the black object, which had been thrown approximately 35 to 40 yards away from his position. Trooper Johnson testified that the object had landed in the middle of the road and that he had been able to keep an eye on it after it was thrown. When Trooper Johnson approached the object, he observed that it was a small, black zipper bag, which was unzipped. He also observed two small, clear plastic bags lying beside the zipper bag, which contained a substance he believed to be methamphetamine. Inside the black zipper bag, Trooper Johnson found two additional plastic bags, which were open and appeared to have residue inside. Pilgrim was then arrested.
¶ 4. Other State witnesses testified as to chain of custody, and Jamie Johnson, a forensic scientist specializing in drug identification, testified that the plastic bags were later confirmed to have contained 0.87 gram of methamphetamine.
¶ 5. The defense put on no witnesses, and Pilgrim did not testify. He was subsequently convicted and sentenced. On appeal, Pilgrim argues three assignments of error.

DISCUSSION

I. Denial of Continuance
¶ 6. On the day of trial, Pilgrim's attorney, Christopher Collins, moved for a continuance, arguing that he had "not conferred in a meaningful way that I normally *151 would with somebody that I thought [I] was going to trial with this morning." Collins, an appointed public defender, stated that this was because Pilgrim was seeking other counsel. Collins stated that, until the morning of the trial, he believed Pilgrim had retained other counsel.[1] Collins admitted, however, that he had been unable to speak with the putative attorney to confirm he would represent Pilgrim, and the prosecutor stated that he had contacted the attorney in the days prior to trial and that the attorney had stated that he would not represent Pilgrim.
¶ 7. In support of his motion for a continuance, Collins also argued that the State failed to timely disclose exculpatory evidence in the result of a fingerprint analysis conducted on the plastic bags. The report found "no latent prints of value."

A. Defense Counsel's Preparedness for Trial
¶ 8. As to the appellate review of a denial of a motion for continuance following a violation of Rule 9.04 of the Uniform Rules of Circuit and County Court, the supreme court has stated:
The trial court has considerable discretion in matters pertaining to discovery, and its exercise of discretion will not be set aside in the absence of an abuse of that discretion. The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice. A violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.
Payton v. State, 897 So.2d 921, 942(¶ 67) (Miss.2003) (internal citations omitted).
¶ 9. Pilgrim argues that the trial court erred in denying his motion for a continuance because Collins was unprepared for the trial. Although Collins did state that he felt he had not adequately consulted with Pilgrim prior to the trial, Collins did not allege any specific resulting prejudice, either in arguing the motion or in his subsequent motion for a new trial. Likewise, on appeal, Pilgrim fails to identify any manifest injustice that resulted from Collins's lack of preparation. Pilgrim simply asserts that Collins was unprepared for the trial; however, Collins made no such admission in the trial court, and Pilgrim has not alleged or demonstrated any specific prejudice as a result. Instead, our review of the record indicates that Collins, who represented Pilgrim for at least two weeks prior to the trial,[2] provided able representation and manifested no lack of familiarity with the facts of the case.

B. Discovery Violation
¶ 10. Pilgrim also argues that the trial court erred in refusing the continuance because of the State's discovery violation. Collins alleged that the State had failed to timely provide the defense with the negative result of a fingerprint analysis on the plastic bags, in violation of Mississippi Uniform Rule of Circuit and County Court 9.04(A)(6), which requires that the State timely disclose exculpatory evidence *152 to the defendant. Collins stated that he had only learned of the result of the fingerprint analysis the morning of the trial, shortly before the trial was to begin. The prosecutor admitted that he had not provided the results of the fingerprint analysis, but he stated that this was because his office had been unaware of the test until shortly before trial.[3]
¶ 11. Here, Pilgrim has alleged specific prejudice. At trial, Collins argued:
I've got a client that apparently has the resources to privately retain a lawyer and while, obviously, we haven't had a chance to discuss it, it may be his desire to retain his own expert on the issue of fingerprints also. I don't know, but, Your Honor, he would be prejudiced to not having [sic] the opportunity to pursue that.
On appeal, Pilgrim broadens that argument. In his brief, he asserts:
The comment that there were "no latent prints of value" was not a denial that there were latent prints. The words "of value" would have been omitted if there had been no latent prints. The addition of the words "of value" meant either that the prints on the bag were unclear or that they were of person or persons unknown to the fingerprint technician.
Had the Court granted the motion for a continuance, Appellant's counsel would have had time to inquire of the technician about this, to determine which databases, if any, were consulted to try to identify any readable fingerprints, and to submit any readable fingerprints to such bases as may be available to identify the person whose fingerprints were on the bag.
¶ 12. Uniform Rule of Circuit and County Court 9.04(I) states:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.[4]
¶ 13. Our standard of review is clear: "The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." Payton, 897 So.2d at 942(¶ 67). "A violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice." Id.
¶ 14. We find that Pilgrim's argument is without merit for several reasons. First, the State's apparent untimely disclosure of the results of its fingerprint analysis is simply unrelated to Pilgrim's ability to pursue his own independent analysis; he could have sought his own fingerprint tests notwithstanding the alleged discovery *153 violation. Likewise, his attorney could have discussed undertaking an independent fingerprint analysis without knowing the results of the State's analysis.
¶ 15. Second, and more fundamentally, reversal on the grounds of a trial court's denial of a motion for continuance requires a showing that the trial court's decision resulted in a manifest injustice. Id. (emphasis added). Pilgrim argues that such an injustice may have resulted had he conducted his own fingerprint analysis, but Pilgrim has failed to demonstrate that an injustice did occur. Pilgrim appears to have made no effort to procure the testimony of the State's analyst or to secure his own analysis. Furthermore, the report from the State's fingerprint analysis does not appear in the record, and nothing in the record supports Pilgrim's assertions on appeal regarding its specific findings. A defendant seeking review of a denial of a continuance may not rest on possibilities. The supreme court has stated that, to preserve for appellate review the denial of a motion for continuance:
If the court declines to grant the continuance [an attorney] should sue out the proper process for [the witnesses he desires to call], and when the case is called for trial should renew his application, make such changes in his affidavit as the conditions then existing require. If the continuance is still refused, he should with unremitting diligence seek to secure their attendance pending the trial by the continued use of the process of the court; if tried and convicted he should still persist in his efforts to enforce their attendance before the expiration of the term, and on his motion for a new trial present them to the court for examination; if, with all of his efforts, he is unable to have the witnesses personally present, he should, if practicable, secure their ex parte affidavits, which should be presented for the consideration of the court, which, on the motion for a new trial, will review the whole case and correct any error prejudicial to the defendant which may appear in any part of the proceeding.
King v. State, 251 Miss. 161, 171-72, 168 So.2d 637, 641 (1964) (citation and internal quotations omitted).
¶ 16. Finally, even if evidence of another's prints had been found on the bags, it would not result in a manifest injustice. Trooper Johnson testified that he observed Pilgrim throw the bags containing the drugs from his vehicle. Pilgrim was taken into custody a short time later, having never left the officers' presence. Pilgrim's identity was not in question. Furthermore, if fingerprints had been found on the bags, it would not be compelling evidence that the drugs were not in Pilgrim's possession prior to being thrown from the vehicle; that another had handled the bags previously is not inconsistent with Pilgrim's guilt.
¶ 17. In reviewing the record, we find no merit to Pilgrim's argument that the trial court abused its considerable discretion in denying his motion for a continuance. This issue is without merit.

II. Defense Jury Instruction D-6
¶ 18. In his second assignment of error, Pilgrim urges this Court to reverse his conviction based on the trial court's refusal to grant proposed jury instruction D-6. This Court's standard of review in challenges to the jury instructions is as follows:
In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Defendants *154 do not have an absolute right to have their jury instructions granted. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.
Watts v. State, 936 So.2d 377, 386(¶ 30) (Miss.Ct.App.2006) (internal citations and quotations omitted).
¶ 19. Pilgrim's proposed jury instruction states the following:
The Defendant is charged by indictment with the crime of possession of methamphetamine. To constitute a possession, there must be sufficient facts to warrant a finding beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that a defendant was aware of the presence and character of the methamphetamine, and was intentionally and consciously in possession of same. Where the particular chemicals are not in the actual physical possession of a defendant, there must be sufficient facts to establish beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that the particular substance involved was subject to the defendant's dominion or control.
(Emphasis added).
¶ 20. The trial court refused the instruction because it would require that the jury find Pilgrim guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. The trial court found this language inappropriate because the State based its case on direct evidence, rather than circumstantial. Because Trooper Johnson witnessed Pilgrim drop the contraband from his car onto the street, the trial court reasoned, Pilgrim's case is not a circumstantial evidence case.
¶ 21. The supreme court defines a circumstantial evidence case as one in which there is no eyewitness testimony or confession. State v. McMurry, 906 So.2d 43, 46(¶ 13) (Miss.Ct.App.2004). "It is only in cases where the evidence is entirely circumstantial that the jury is required to exclude every other reasonable hypothesis than guilt." Id. at (¶ 15) (quoting Whitlock v. State, 419 So.2d 200, 204 (Miss.1982)) (emphasis added). Because Trooper Johnson's eyewitness testimony constituted direct evidence, no circumstantial evidence instruction was required in this case.
¶ 22. Furthermore, absent the circumstantial evidence language of proposed instruction D-6, the instruction is essentially the same as instruction S-3, which was given by the trial court. Instruction S-3 states:
The Court instructs the Jury that to constitute possession, there must be sufficient facts to warrant a finding that the Defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be in actual physical possession; constructive possession may be shown by establishing that the substance involved was subject to the Defendant's dominion and control.
Both instructions define constructive possession for the jury and require Pilgrim's awareness of the nature of the contraband. Because the trial court may refuse an instruction which "incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence," we find no error in the trial court's *155 refusal to give proposed instruction D-6. See Watts, 936 So.2d at 386(¶ 30).
¶ 23. Therefore, this issue is without merit.

III. Hearsay Testimony
¶ 24. Finally, Pilgrim argues that the trial court allowed impermissible hearsay testimony. At trial, Mississippi Bureau of Narcotics Agent Will Peterson testified for the State as to the chain of custody. On cross-examination, the following colloquy took place:
Q. Agent Peterson, the assistance you talked about giving to other agencies, is that assistance in processing what's alleged drug evidence?
A. That's correct.
Q. In this instant, when you took possession of the exhibit from Trooper Johnson, did you put on latex gloves before you handled it?
A. I did.
Q. And the reason you did that is because when you submitted this evidence for analysis, you requested both drug analysis and also fingerprint analysis?
A. That's correct.
Q. And you submitted a known fingerprint card of the accused?
A. That's correct.
[DEFENSE COUNSEL]: No further questions.
THE COURT: Redirect?
REDIRECT EXAMINATION BY [PROSECUTOR]:
Q. Agent Peterson, what was the result of that fingerprint request?
A. The Crime Lab did not find any
[DEFENSE COUNSEL]: Your Honor, I object to hearsay testimony here.
[PROSECUTOR]: Your Honor, he opened the
THE COURT: I'll overrule the objection.
[DEFENSE COUNSEL]: Your Honor, may I further make my objection.
Ultimately, the trial judge overruled Pilgrim's contemporaneous objection as well as his subsequent motion for a mistrial. Redirect examination by the State produced the following testimony:
Q. [PROSECUTOR]: Agent Peterson, before [defense counsel's] objection, I asked you what was the result of the fingerprint examination that you submitted to the Crime Lab?
A. [AGENT PETERSON]: According to their report, there was [sic] no prints of value found on the baggies, on the submission.
The State argued that admission of testimony attesting to the fact there were no prints of value did not result in any prejudice to the defendant and was admissible because Pilgrim "opened the door."
¶ 25. Pilgrim, citing Murphy v. State, 453 So.2d 1290 (Miss.1984), argues on appeal that the trial court abused its discretion because the defense cannot open the door to hearsay. The State replies that the testimony elicited was not hearsay, because it was not offered to prove the truth of the matter assertedwhether there were or were not fingerprints on the bagbut to rebut the defense's insinuations of an incomplete or shoddy investigation and to tell the complete story of the investigation.
¶ 26. "Relevancy and admissibility of evidence are largely within the discretion of the trial court and [a reviewing court] will reverse only where that discretion has been abused." Hentz v. State, 542 So.2d 914, 917 (Miss.1989). Furthermore, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right is affected *156 by the ruling. M.R.E. 103(a). "If the defendant fails to show what right, if any, was affected by such ruling, no reversible error lies." Johnson v. State, 908 So.2d 758, 765(¶ 24) (Miss.2005) (citing Simmons v. State, 805 So.2d 452, 487-88(¶ 92) (Miss. 2001)).
¶ 27. In his brief on appeal, Pilgrim simply asserts that the testimony was hearsay and should not have been admitted. Because Pilgrim has failed to identify what rights, if any, were affected by the trial court's decision, this argument is without merit. Furthermore, Pilgrim has repeatedly argued that the negative result of the fingerprint analysis was exculpatory. Clearly, reversible error cannot be found in the wrongful admission of exculpatory evidence. This issue is without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCE AS A SECOND OFFENDER OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
LEE, P.J., IRVING, BARNES AND ROBERTS, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., GRIFFIS AND ISHEE, JJ.
CARLTON, J., Dissenting.
¶ 29. I respectfully submit that the discovery violation by the State in this case snowballed during the course of the trial into reversible error. The trial judge received notice at the beginning of the trial that the State failed in its discovery obligation under Rule 9.04(A)(4) of the Uniform Rules of Circuit and County Court to produce the report of the lab examiner regarding the fingerprint analysis conducted by the State. In reaction to notice of the discovery violation, the trial court took no remedial steps or curative steps in response thereto. The trial judge denied the defense's request for a continuance to investigate the lab report or interview the examiner. Then during the course of trial, the State presented evidence as to the contents of the lab report setting forth the conclusion of the lab examiner through the hearsay testimony of Mississippi Bureau of Narcotics Agent Will Peterson. I respectfully find reversible error in this case where the State violated discovery and then aggravated the discovery violation by offering hearsay testimony as to unauthenticated contents of the document that the State failed to produce in discovery to the defense. Therefore, I respectfully dissent.
¶ 30. Rule 9.04(A) requires the State, with few exceptions, to produce to a defendant certain evidence "which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution." See also Box v. State, 437 So.2d 19, 25 n. 4 (Miss.1983) (Robertson, J., specially concurring) ("[T]he State ... should disclose all information it has plus all information it could obtain with due diligence or upon reasonable inquiry"). Rule 9.04(I) of the Uniform Circuit and County Court Rules provides the following procedure for trial judges to handle discovery violations:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery *157 of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
The court shall follow the same procedure for violation of discovery by the defense.
(Emphasis added).
¶ 31. On the day of trial, Pilgrim requested a continuance because his counsel was unprepared to represent him and the State failed to produce the lab report at issue. The trial judge denied Pilgrim's request, only allowing the defense a few minutes before trial began to find Agent Peterson, who possessed the report, so the defense could examine it. Note, Rule 9.04 places a duty on the prosecution to disclose any reports such as the lab report prepared in connection with this case, and the State must abide by its discovery duties if the existence of the evidence is known or by the exercise of due diligence should it become known to the prosecution. The State failed to exercise such due diligence in this case in failing to produce the report to Pilgrim or his counsel. The late disclosure prevented Pilgrim's counsel from interviewing the fingerprint examiner whose conclusions were reflected in the report or to otherwise investigate the report, interview the examiner, or to consult other examiners.
¶ 32. The Mississippi Supreme Court addressed a similar scenario in Foster v. State, 493 So.2d 1304 (Miss.1986). In Foster, the State violated Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice[5] by failing to disclose the results of the state crime laboratory's comparison of the defendant's hair to a hair found on a disguise. Id. at 1306. At trial, the defense elicited testimony during cross-examination of a police officer that revealed the existence of the report. Id. After hearing the testimony regarding the contents of the lab report on cross-examination, the defense requested production of the document, which the trial court denied. Id. at 1307. The Foster court reasoned as follows:
The [S]tate cites a number of cases for the proposition that reversal for discovery violations of this nature is proper only where prejudice is shown. With one exception, all of these cases antedate the adoption of Rule 4.06. The exception is Bracy v. State, 396 So.2d 632 *158 (Miss.1981), in which portions of a report filed by a narcotics officer were withheld from the defense. The Court in that case refused to reverse because the portions of the report withheld "contain nothing ... that would have helped the defense or might have affected the outcome of the trial." (396 So.2d at 636). But Bracy differs from the present case in that the trial court and this Court reached that conclusion after examining the report. In the present case, the report was simply not seen by the trial court or this Court. The only testimony as to the content of the report was that given by Officer [G.A.] Liles. Obviously, it will not do for the [S]tate to withhold lab reports and then offer the unsupported testimony of its own witnesses as establishing their content.

Id. at 1307 (emphasis added).
¶ 33. Though the trial court in the present case did not deny Kendall Pilgrim an opportunity to review the lab report, the trial court did conclude, based on assertions by the State, that the report contained no exculpatory information. In the case before this Court, the trial judge reasoned that the discovery violation was "academic" and "of no moment" because "[the prosecutor] said that no prints, no latent prints were lifted." The trial judge accepted the prosecutor's assertion that the report contained no valuable information.[6] However, the supreme court has held that defense attorneys should determine whether or not discoverable material will be helpful in defending their clients. Hentz v. State, 489 So.2d 1386, 1388 (Miss.1986). The lab report is not a part of the record for this Court to review on appeal.
¶ 34. In reversing the trial court's judgment in Foster, the supreme court relied on Hentz, 489 So.2d at 1388. Foster, 493 So.2d at 1308. The Hentz case dealt with another similar situation in which the State failed to produce tapes during discovery, but allowed testimony regarding their contents at trial. Hentz, 489 So.2d at 1387. The supreme court reversed the conviction and stated the following:
An important question in discovery, such as involved here, is who is going to determine whether or not tapes or written instruments are exculpatory or important to the defense, if counsel is unable to see, hear, or know what is contained therein? Is the State['s] attorney the only person who will make that determination? We think not. The Court now declares that as a matter of good practice and sound judgment in the trial of criminal cases, prosecuting attorneys should make available to attorneys for defendants all such material in their files and let the defense attorneys determine whether or not the material is useful in the defense of the case. We direct the attention of trial judges to this problem and suggest that they diligently implement this suggestion in order to dispense with costly errors, which might cause reversal of the case.
Id. at 1388.
¶ 35. While the trial judge in the instant case allowed Pilgrim to read the lab report before trial, Pilgrim possessed no *159 meaningful opportunity to investigate the report or the methods used to analyze the fingerprints; the fingerprint examiner, or the qualifications possessed by such examiner; the chain of custody of the evidence; or whether such lab results could be useful in his defense. In reversing a criminal conviction for a discovery violation, the supreme court in Box, 437 So.2d at 21, stated that "[t]his State is committed to the proposition that ... conflicting interests [of the prosecution and defense] are best accommodated and that justice is more nearly achieved when, well in advance of trial, each side has reasonable access to the evidence of the other." Further, the Box court held that "[p]rosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is no rule." Id.
¶ 36. Recently, in Fulks v. State, 18 So.3d 803 (¶ 14) (Miss. 2009),[7] the supreme court reversed the armed robbery and aggravated assault convictions of Tomarcus Monte Fulks based on the State's violations of Rule 9.04. The Fulks court held that the trial court's failure to grant the defendant a continuance when faced with a witness whose story changed from exculpatory to inculpatory on the evening before trial began constituted reversible error. Id. The supreme court held that the defendant had insufficient time to react effectively to the change in the evidence. Id. at (¶ 12). Likewise, without a continuance to evaluate the lab report, Pilgrim had an insufficient period of time to investigate the previously-undisclosed evidence. I find the trial judge abused his discretion by denying Pilgrim's request for a continuance to examine and evaluate the lab report.
¶ 37. Moreover, I find that allowing the hearsay testimony regarding the contents of the report into evidence constituted an abuse of discretion. Rule 801(c) of the Mississippi Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The State argues that the prosecution offered the testimony regarding the lab report for the purpose of showing the jury that the State had conducted a complete investigation and not to prove that the crime lab had found no prints on the bag. However, the officer testified to more than the course of investigation, chain of custody, or merely the sequence of events to show a complete investigation. He testified to the results contained in the report and conclusions of the lab examiner.
¶ 38. The majority asserts that Pilgrim opened the door to the admission of the lab-report evidence. However, the door cannot be opened to admit hearsay. The supreme court has held that "[t]here is no hearsay exception based upon the scope of examination. You may allow its admission by failing to object to it, but you simply cannot `open the door' to hearsay." Murphy v. State, 453 So.2d 1290, 1294 (Miss. 1984). Instead, evidence rendered relevant by and offered through an opened evidentiary door would have to be properly authenticated and meet evidentiary foundational requirements in order to be admissible. In short, Pilgrim could not open the door to allow hearsay testimony regarding the lab report. Id.
¶ 39. The State utilized Agent Peterson's testimony to admit the results and conclusions contained in the report of the lab examiner into evidence, even though the law enforcement officer could not authenticate *160 the document or conclusions contained therein. See M.R.E. 802 ("[h]earsay is not admissible except as provided by law").
¶ 40. The United States Supreme Court recently held in Melendez-Diaz v. Massachusetts, ___ U.S. ___, ___, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009) that certificates of analysis indicating that seized evidence contained cocaine were testimonial statements. The Supreme Court held that the certificates were "functionally identical to live, in-court testimony, doing `precisely what a witness does on direct examination.'" Id. (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). Further, "[a]bsent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial." Id. (quoting Crawford v. Washington, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Therefore, in light of Rule 9.04 and the Supreme Court's holding in Melendez-Diaz, I would find the contents of the report were inadmissible without the fingerprint analyst from the crime lab present as a witness. The trial judge abused his discretion in allowing Agent Peterson to testify regarding the unauthenticated contents of the lab report.
¶ 41. For the reasons stated above, I respectfully dissent and would reverse the judgment of the trial court and remand this case for further proceedings.
KING, C.J., GRIFFIS AND ISHEE, JJ., JOIN THIS OPINION.
NOTES
[1] Collins did not elaborate on the exact circumstances that led him to believe Pilgrim had secured other counsel.
[2] In arguments before the trial court, the prosecutor stated without objection that Collins had announced the case would be ready for trial approximately two weeks prior to the trial date. While it is unclear from the record exactly when Collins was appointed, what appears to be his signature appears on a waiver of arraignment form as Pilgrim's attorney, dated January 25, 2008, approximately seven weeks before the trial.
[3] The fingerprint analysis report does not appear in the record, and the record is silent on exactly when the report was ordered, completed, or delivered. Collins stated that he knew a report had been ordered as "when I read the discovery this morning prior to trial, I noticed that there was some evidence submitted and some results requested from the Crime Lab ... I didn't see any results on [sic] fingerprint analysis request."
[4] The dissent's reliance on the latter part of this rule is misplaced. It applies only to objections made where, "If during the course of the trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense...." URCCC 9.04(I) (emphasis added). Pilgrim's motion for a continuance was made prior to trial and not in response to a surprise attempted admission of the fingerprint analysis.
[5] Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice is now Rule 9.04 of the Uniform Rules of Circuit and County Court.
[6] I note that Rule 9.04(A) does not require the discovery material to be "exculpatory" in order for the State to be required to produce it to the defendant. The rule requires that the State produce, among other items, "[a]ny reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert." UCCCR 9.04(A)(4). The rule then further requires the production of "[a]ny exculpatory material concerning the defendant." UCCCR 9.04(A)(6).
[7] The supreme court handed down the Fulks opinion on July 23, 2009. As of the time of the drafting of this dissent, the time for rehearing had not closed.